IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| OASBY GILLIAM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.: 3:05-cv-803 JPG |
| | ) | |
| DIEDRE BATTAGLIA, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATIONS**

This matter has been referred to Magistrate Judge Donald G. Wilkerson by District Judge

J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and

SDIL-LR 72.1(a) for a Report and Recommendation on the Petition for a Writ of Habeas Corpus

filed by the Petitioner, Oasby Gilliam on November 8, 2005 (Doc. 1).  For the reasons set forth

below, it is **RECOMMENDED** that the Petition be **DENIED**, that this matter be **DISMISSED**, and

that the Court adopt the following findings of fact and conclusions of law:[1]

**FINDINGS OF FACT**

The Supreme Court of Illinois summarized the facts of the case as follows:[2]

The State's evidence at trial was essentially as follows. On June 19, 1992, at
approximately 2:15 p.m., bartender Russell Turner was alone at work at Sovereign
Liquors, at 6202 N. Broadway in Chicago. Defendant entered the tavern and
asked to use the restroom. Before he left, defendant put down a plastic grocery bag and
ordered a beer.

The bag contained a paper bag that held two bricks.  When he returned, defendant
changed his order. As Turner leaned over to fill a glass with ice, defendant struck

---

[1] This Court further **RECOMMENDS** that Terry McCann, the current Warden of
Stateville Correctional Center, be substituted for Deirdre Battaglia.

[2] Under 28 U.S.C. §2254(e)(1), the determination of factual issues by a State court "shall
be presumed to be correct."

Turner over the head with the bag, and a vicious struggle ensued.  Defendant repeatedly pounded and stamped on Turner and struck him with a brick and a liquor bottle.

Turner eventually maneuvered himself such that he struggled to pull defendant out the tavern door, while defendant pulled Turner to keep him inside. Because Turner was covered in his own blood, defendant slipped out of Turner's hands and Turner went out the door. Once Turner was outside, defendant immediately ran out of the tavern. Defendant ran south on Broadway and then west on nearby Granville Avenue.

The victim in this case, Aileen D'Elia, lived on the first floor of a two-flat building at 6223 N. Lakewood Avenue. The victim was 79 years old, 5 feet 2 inches tall, and wore dentures. She wore a Medic Alert bracelet, wedding and engagement rings, a ring containing an aquamarine stone, earrings, a wristwatch, and a silver bracelet. Also, the victim owned a brown 1986 Chevrolet Caprice. The car was in good condition because the victim kept it in the garage behind her home.

On June 19, 1992, between 2:20 and 2:40 p.m., the victim returned home, driving her car onto a cement slab next to her garage. At approximately 4:30 p.m., the victim's granddaughter, who lived on the second floor of the building, noticed that the victim's apartment door was ajar and her car was missing.

On July 1, the victim's corpse was found in a field near Illinois Route 15, approximately 2½ miles from Interstate 57, in Jefferson County. The body was in a wooded area not visible from an access road 30 yards away. Near the body, crime technicians found the victim's Medic Alert bracelet and dentures, and a watch crystal. Technicians also found two plastic grocery bags from the grocery store where the victim shopped. One of the bags had a red substance with gray hairs on it. Subsequent laboratory examination revealed the hairs to be consistent with those of the victim. The hairs were broken off at the roots, consistent with having been struck by a blunt object. The victim's identification and driver's license were subsequently found in a bushy area next to an exit ramp of Interstate 57.

The victim died from multiple skull fractures caused by multiple blows to the head and face. The fractures were consistent with being struck by a tire iron. Manual strangulation possibly contributed to the victim's death.  The victim may have lived for several hours after the attack.

On the afternoon of June 20, 1992, defendant arrived in Greenwood, Mississippi, to visit an aunt, Theresa Caruthers, and a cousin, Thelma Scott-Robinson.  Defendant drove a brown, four-door Chevrolet in good condition with Illinois license plates. Robinson asked defendant about stains in the back seat of the car that appeared to her to be blood. Defendant replied that children had spilled juice on the seat. She also

noticed "a costume jewelry . . . old-time Indian like ring" on the front seat of the car. Defendant said that he bought it. At one point during his visit, defendant appeared to Robinson to be nervous and restless. She asked him what was wrong and defendant replied, "If you only knew."

Chicago Police Detective Ray Kaminski investigated the attempted robbery at Sovereign Liquors. The attack on Turner lasted approximately 10 to 15 minutes. Defendant struck Turner approximately 20 times in the head with a brick. Turner received 48 stitches on his head at a nearby hospital. Defendant's wallet was subsequently found in the tavern; the wallet contained his identification and photograph. Turner subsequently identified defendant from a photograph array and a police lineup, and in court. Although defendant was charged with the attempted robbery of Turner, the charge was dismissed when the State proceeded on the first degree murder charge in this case.

Inspecting defendant's wallet, Kaminski found a slip for a nearby pawn shop where defendant's girlfriend, Daphne "Trina" Townsend, worked. Townsend told Kaminski that she had last seen defendant on the morning of June 19.

Detective Kaminski also interviewed one of defendant's sisters, Jill Traylor; defendant's employer, Charles Mickins; and Turner. The police then sought through the Federal Bureau of Investigation (FBI) a federal warrant for defendant's arrest. The police also contacted Caruthers in Greenwood. Kaminski also maintained contact with Townsend and another of defendant's sisters, Edna Bridges.

During the week of August 11, 1992, defendant returned to Chicago and stayed with Bridges. On the morning of August 18, defendant directed Bridges and Townsend to telephone police and arrange for his surrender. Townsend first attempted to telephone Chicago Police Detective Anne Chambers, who had investigated the murder of Townsend's and defendant's son. Chambers had known Townsend for approximately one year and had met defendant two days prior to the victim's disappearance. Chambers, however, was not at the station. Townsend then attempted to telephone Detective Kaminski, but he too was unavailable. Bridges then telephoned Area 6 police headquarters and talked to someone else.

At approximately 12:30 p.m., Detective Kaminski and three additional officers arrived at Bridges' apartment building. The officers arrested defendant and, pursuant to Bridges' request, took him down the back stairs. When they reached the squad car, Kaminski handcuffed defendant, gave him his Miranda warnings, and put him in the car.

Defendant arrived at Area 6 police headquarters at approximately 1:30 p.m. At approximately 1:30 a.m. on August 19, 1992, he confessed.

Defendant's confession was essentially as follows. On June 19, 1992, as defendant left a Broadway bus at Granville Avenue, he saw Turner enter Sovereign Liquors. Defendant believed that Turner had punched defendant's pregnant girlfriend in the stomach the preceding week. Defendant entered the tavern with a brick and a fight ensued.

As defendant ran out of the tavern, two unknown men chased him into an alley. Defendant happened upon the victim getting in or out of her car. He approached her and ordered her to get in the car. The victim did, with defendant, who ordered her to drive. Defendant eventually ordered the victim to drive to a parking area at the Foster Avenue beach. Defendant then ordered the victim to get out of the car and to get in the trunk. She did, and defendant locked her in the trunk.

As defendant drove south on Interstate 57, he considered what to do with the victim, who could identify him. Between 7:30 and 8 p.m., defendant exited the interstate and drove to a field bordered by trees. He released the victim from the trunk. While she stood near the car, defendant took a tire iron from the trunk. Defendant then struck the victim two or three times on the head with the tire iron. The victim fell to the ground, but continued to move. Defendant struck the victim several more times on the head with the tire iron until she was still. Defendant then dragged the victim into a wooded area. He returned to the car, cleaned the tire iron, replaced it in the trunk, and continued south on Interstate 57. Defendant also took $10 that he found in the car.

Defendant arrived in Greenwood, Mississippi, the next day. He stayed for five or six hours and visited relatives.  Defendant then drove to Dallas, Texas, where he stayed for five weeks. At the end of that time, defendant sold the victim's car for $150. The buyer subsequently told defendant that the car was shipped to Mexico. It has never been found.

After selling the victim's car, defendant traveled through Louisiana, Mississippi, and Alabama. Defendant then took a bus to Chicago, where he arrived on August 11, 1992. He stayed with Bridges until his surrender on August 18.

The defense case was essentially that the State failed to prove defendant guilty of the charged offenses beyond a reasonable doubt. The defense asserted that police coerced defendant into falsely confessing. At the close of the evidence, the jury returned three general verdicts of guilty, one each for first degree murder, aggravated kidnaping, and robbery.

*People v. Gilliam*, 670 N.E.2d 606, 610-12 (Ill. 1996).

After the jury found defendant eligible for the death penalty, the trial court sentenced

Petitioner to death for the murder, and to two concurrent extended 30-year prison sentences for the aggravated robbery and kidnaping. *Id.* at 613.

### Direct Appeal

Defendant appealed directly to the Illinois Supreme Court, which affirmed the convictions on May 23, 1996. *See People v. Gilliam*, 670 N.E.2d 606 (Ill. 1996). Petitioner filed a petition for writ of certiorari in the United States Supreme Court, which was denied on March 3, 1997. *Gilliam v. Illinois*, 520 U.S. 1105 (1997).  On January 11, 2003, the Governor of Illinois commuted Petitioner's death sentence to natural life in prison (Doc. 16, Exh. P).

### Collateral Review

On December 28, 1995, Petitioner filed a *pro se* petition for post-conviction relief in the trial court (Doc. 13, Exh. F).  The trial court appointed counsel who amended the petition on July 15, 1997 (Doc. 14, Exh. G).  Petitioner filed a supplemental petition on September 26, 1997 (Doc. 14, Exh. H), and a second supplemental petition on August 6, 1999 (Doc. 14, Exh. I).  The State of Illinois moved to dismiss the petition for post-conviction relief on October 1, 1998 (Doc. 14, Exh. J), and moved to dismiss the second supplemental petition on December 14, 1999 (Doc. 15, Exh. K).  After holding a hearing on April 24, 2000, the trial court granted the State's motions to dismiss and denied post-conviction relief (Doc. 15, Exh. L).  The court also denied Petitioner's motion to file additional affidavits and to take additional depositions.  Petitioner appealed the dismissal of the petition for post-conviction relief (Doc. 15, Exh. M).  The Appellate Court of Illinois affirmed the dismissal on May 14, 2004 (Doc. 16, Exh. P).  Petitioner sought leave to appeal in the Illinois Supreme Court (Doc. 16, Exh. Q), which was denied on September 13, 2004 (Doc. 16, Exh. R).

*Federal Habeas Petition*

Petitioner filed a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254

in this Court on November 8, 2005 (Doc. 1), raising the following grounds for relief:

1.   Petitioner's confession was involuntary because it resulted from threats to arrest his family members and take away his infant child;

2.   Petitioner was denied his constitutional rights to due process, confrontation, and effective assistance of counsel when the trial court refused to reopen his motion to suppress statements and refused to appoint a psychiatrist to examine him regarding the voluntariness of his confession;

3.   The trial court denied Petitioner due process of law when it limited the evidence and argument which he could introduce regarding the circumstances surrounding his confession;

4.   Petitioner was denied due process when the trial court allowed testimony about police lineups that revealed Petitioner's involvement in other unrelated criminal activity;

5.   Petitioner was denied due process and a fair and impartial jury because the trial court improperly excused a prospective juror who was qualified to serve under the controlling rule of *Witherspoon v. Illinois*;

6.   Petitioner was denied due process when the state failed to disclose that two state witnesses were interested in collecting reward money they believed had been offered for his capture and conviction and when the post-conviction court refused to allow him to develop the claim through discovery;

7.   Petitioner was denied due process and received ineffective assistance of counsel when counsel failed to request a fitness hearing because Petitioner was taking Darvocet, a medication with psychoactive effects; and

8.   The state violated Petitioner's due process rights in failing to disclose that he was taking Darvocet around the time of his trial.

In a Response, filed on June 7, 2006 (Doc. 13), the Respondent concedes that Petitioner has

exhausted all of his state court remedies, but argues that each of Petitioner's claims are otherwise

procedurally defaulted, not cognizable, or without merit.

## CONCLUSIONS OF LAW

An inmate in state custody may challenge his underlying state conviction in a petition for habeas corpus relief filed pursuant to 28 U.S.C. §2254. Any claim that has been adjudicated on the merits in a state court proceeding is governed by 28 U.S.C. §2254(d). *Canaan v. McBride*, 395 F.3d 376, 382 (7th Cir. 2005). This code section provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d)(1) describes two different methods by which a writ can be granted based on an error by the state court. A state court's decision is "contrary to" clearly established Supreme Court precedent when it reaches a legal conclusion that is opposite to a legal conclusion announced by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Owens v. Frank*, 394 F.3d 490, 496-497 (7th Cir. 2005). A state court's conclusion is an "unreasonable application" of Supreme Court precedent when the state court identifies the correct legal rule as determined by the Supreme Court, but unreasonably applies it to the facts of the case, unreasonably extends a legal principle from existing precedent, or refuses to extend that principle to a new context where it should apply. *Owens*, 394 F.3d at 496-497 (quoting *Williams*, 529 U.S. at 405). As the Supreme Court has stated:

We have made clear that the "unreasonable application" prong of §2254(d)(1)

> permits a federal habeas court to "grant the writ if the state court identifies the
> correct governing legal principle from this Court's decisions but unreasonably applies
> that principle to the facts" of petitioner's case.  In other words, a federal court may
> grant relief when a state court has misapplied a "governing legal principle" to "a set
> of facts different from those of the case in which the principle was announced." In
> order for a federal court to find a state court's application of our precedent
> "unreasonable," the state court's decision must have been more than incorrect or
> erroneous.  The state court's application must have been "objectively unreasonable."

*Wiggins v. Smith*, 539 U.S. 510, 520-521 (2003) (citations omitted); *see also Owens*, 394 F.3d at

496-497.  The writ may not issue merely because the state court applied clearly established federal

law erroneously or incorrectly; the application must also be unreasonable. *Williams*, 529 U.S. at 411;

*see also Owens*, 394 F.3d at 497.  The burden is on the Petitioner to show that he is entitled to relief.

*Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004).

Section 2254(d)(2) involves the "unreasonable determination of the facts in light of the

evidence presented in the state court proceeding."  In considering this section, this Court presumes

that the state court correctly determined the factual issues; the petitioner bears the burden of showing

that the state court erred by clear and convincing evidence. 28 U.S.C. §2254(e)(1); *See also Benefiel*

*v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004).

## GROUND 1

Petitioner argues that his confession was involuntary:  that he was coerced into confessing

because police threatened to arrest members of his family and to have his daughter placed with the

Department of Child and Family Services.  Petitioner raised this claim in his direct appeal to the

Supreme Court of Illinois, which determined:

> [T]he test of voluntariness is whether the defendant made the statement freely,
> voluntarily, and without compulsion or inducement of any sort, or whether the
> defendant's will was overcome at the time he or she confessed. *People v. Clark*, 114
> Ill. 2d 450, 457, 103 Ill. Dec. 102, 501 N.E.2d 123 (1986), citing *People v. Prim*, 53
> Ill. 2d 62, 70, 289 N.E.2d 601 (1972).

> Whether a statement is voluntarily given depends upon the totality of the circumstances. The question must be answered on the facts of each case; no single fact is dispositive. Factors to consider when determining voluntariness include: the defendant's age, intelligence, background, experience, mental capacity, education, and physical condition at the time of question; the legality and duration of the detention; the duration of the questioning; and any physical or mental abuse by police, including the existence of threats or promises. *People v. Melock*, 149 Ill. 2d 423, 447-48, 174 Ill. Dec 857, 599 N.E.2d 941 (1992); *see People v. Haymer*, 154 Ill. App. 3d 760, 770, 107 Ill. Dec. 323, 506 N.E.2d 1378 (1987) (collecting cases).

*People v. Gilliam*, 670 N.E.2d at 613-14.

United States Supreme Court jurisprudence regarding the voluntariness of a confession has focused on whether a defendant's "will was overborne" by the circumstances of the confession, considering "the totality of all the surrounding circumstances–both the characteristics of the accused and the details of the interrogation." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)); *Gilbert v. Merchant*, 488 F.3d 780, 791 (7th Cir. 2007). In this Circuit, a confession is voluntary when "it is the product of a rational intellect and free will, and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *Pole v. Randolph*, 570 F.3d 922, 941-42 (7th Cir. 2009) (citing *United States v. Gillaum*, 372 F.3d 848, 856 (7th Cir.2004)). The Supreme Court has also held that coercive police conduct must cause the involuntary confession. Absent that causal connection, a defendant's due process rights are not violated. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). "Courts may consider, among other things, the age, experience, education, background and intelligence of the accused, the length of the questioning, and other circumstances surrounding the interrogation when evaluating whether a confession was voluntarily given." *Pole*, 570 F.3d at 942 (citing *Johnson v. Pollard*, 559 F.3d 746, 755 (7th Cir.2009)).

In analyzing this claim, the Illinois Supreme Court described in detail the conditions and circumstances of Petitioner's confession and the arguments made at the suppression hearing in the trial court, concluding:

> At the close of the suppression hearing, the trial court denied defendant's motion to suppress his confession.  The court expressly stated that it believed the State's witnesses and disbelieved defendant's.  The court specifically found that defendant's testimony was unbelievable.
> . . .
>
> After reviewing the entire record, we uphold the trial court's determination that defendant's confession was voluntary.  The trial court plainly found the State's witnesses to be more credible, and rejected defendant's explanation for his statement. The credibility of the witnesses regarding the voluntariness of a statement is to be determined by the trial court and that determination will not be reversed unless against the manifest weight of the evidence. *People v. Ramey*, 152 Ill. 2d 41, 58, 178 Ill. Dec. 19, 604 N.E.2d 275 (1992).  We cannot say that the trial court's findings were against the manifest weight of the evidence.

*People v. Gilliam*, 670 N.E.2d at 615-16.

The Illinois Supreme Court's determination that Petitioner's confession was voluntarily-made is not contrary to or an unreasonable application of clearly established federal law.  The Supreme Court of Illinois identified the relevant legal standard, and found, based upon the totality of the circumstances, that Petitioner's confession was voluntary.  Although the court did not cite United States Supreme Court cases, the court laid out the correct controlling legal standard, namely, whether based on the totality of the circumstances, Defendant's free will was overcome at the time of the confession.[3]

The Illinois Supreme Court determined that the trial court's determination of the

---

[3]A state court is not required to cite United States Supreme Court opinions as long as neither its reasoning nor its resulting decision contradicts clearly established Supreme Court precedent. *See Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam).

voluntariness of the confession rested upon its finding that the testimony of the State's witnesses were more credible than that of the Petitioner. On habeas review, a factual determination made by a state court is presumed to be correct. Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1). Here, Petitioner presents no evidence to rebut the presumption that the state court's credibility determination was correct. Even if he had provided such evidence, a federal court sitting in habeas does not review factual determinations of the state court; its task is limited to determining whether the state court's determination of a claim "resulted in a decision that was contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state court identified the correct legal standard and applied that standard to the facts of the case in a manner that was not objectively unreasonable. Accordingly, it is **RECOMMENDED** that Ground 1 of the petition be **DENIED**.

### GROUND 2

Petitioner argues he was denied due process and effective assistance of counsel when the trial court refused to reopen the suppression hearing to appoint a psychological expert to determine and testify to the voluntariness of Petitioner's confession. Petitioner raised the due process claim on direct appeal. *People v. Gilliam*, 670 N.E.2d at 616.

### *Ineffective Assistance of Counsel*

Petitioner states in the petition that "the ineffective assistance aspect was not pursued on post conviction appeal" (Doc. 1, p. 16). Respondent interprets this statement to mean that Petitioner did

- 11 -

not properly exhaust the claim.  Upon review of the record, the Court agrees.  The ineffective assistance of counsel portion of this claim did not receive one complete round of the State's appellate review process for the claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005) (quotation marks and citation omitted).  Petitioner did not raise the ineffective assistance of counsel claim on either direct appeal or appeal from the denial of post-conviction relief.  Accordingly, Petitioner has procedurally defaulted the claim.

### *Due Process Violation*

The Petitioner moved in the trial court to reconsider its denial of the motion to suppress his confession and to order a psychiatric evaluation to determine whether he was especially vulnerable to psychological coercion.  After a hearing, the trial court denied the requests to reopen the suppression hearing and appoint an expert. *Id*.

On appeal, the Supreme Court of Illinois did not address the claim on its merits, finding instead that  collateral estoppel barred rehearing on a motion to suppress in the same proceeding. The Illinois court recognized that "[t]he only exception to the bar is where the defendant shows 'exceptional circumstances or any evidence in addition to that submitted upon the first hearing which had become available for submission in connection with the motion to suppress.'" *Id.* (quoting *People v. Holland*, 307 N.E.2d 380 (Ill. 1974)).  Although Petitioner argued that the psychiatric evaluation was evidence "in addition to that submitted upon the first hearing," and therefore subject to review under the exception to the collateral estoppel bar, the court determined none of the evidence proffered was discovered after the original suppression hearing.  The court

determined that "defendant could have requested a psychiatric examination when he filed his original suppression motion," and concluded that "[w]e cannot say that the trial court erred in denying defendant's motion to reconsider its denial of defendant's motion to suppress." *People v. Gilliam*, 670 N.E.2d at 616.

When a state court address a question of federal law and bases its decision on independent and adequate state law grounds--either substantive or procedural--the Federal Courts generally will not disturb such a finding on habeas review. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) ("Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory."); *Miranda v. Leibach*, 394 F.3d 984, 391-392 (7th Cir. 2005) ("A state ground is deemed independent for this purpose only if the state court actually relied on a state rule sufficient to justify its decision . . . . The adequacy of the state ground is a question of federal law . . . ; the ground is considered adequate only if the state court applies the rule in a consistent and principled way" (citations and quotation marks omitted)). This rule recognizes the importance of "finality, comity, and the orderly administration of justice" and the reluctance of the federal courts to rule contrary to the state court on an issue of state law. *See Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) ("The procedural default doctrine and its attendant 'cause and prejudice' standard are 'grounded in concerns of comity and federalism,' . . . and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack." (citations omitted)). The object is to allow the state courts the opportunity to address the petitioner's claims in the first instance. *Edwards*, 529 U.S. at 451.

The doctrine that federal habeas review is precluded where a state court judgment rests on

an independent and adequate state ground "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 729-30.   "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Id.* at 732.   Such a petitioner has not exhausted his available state remedies as to the federal claim at issue. *Id.* at 731.

It is not always clear whether "a state court's reference to state law constitutes an adequate and independent state ground for its judgment." *Harris v. Reed*, 489 U.S. 255, 261 (1989).  Thus, the Supreme Court applies a presumption that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Id.* at 263 (citations omitted).  This "plain statement" doctrine allows a federal court sitting in habeas to review the state court's constitutional determination unless the state makes clear that its decision rests firmly on state law grounds. *Id.*

Here, the Illinois Supreme Court's opinion "clearly and expressly" states that under Illinois law, collateral estoppel "bars a rehearing on a motion to suppress in the same proceeding." The court noted the existence of a possible avenue for review where the defendant shows "exceptional circumstances or any evidence in addition to that submitted upon the first hearing which had become available for submission in connection with the motion to suppress."  Illinois courts have construed the exception to the collateral estoppel bar to mean only newly-discovered evidence. The court thus rejected Petitioner's argument that the psychological evidence was in addition to that submitted

- 14 -

upon the first hearing, finding that none of the evidence identified by Petitioner was "newly discovered since the suppression hearing." Thus, the court found no error in the trial court's denial of Petitioner's motion to reconsider its denial of the motion to suppress, and it did not address the claim on its merits. Because the state court relied on collateral estoppel in failing to reach the merits of the claim, the claim rested upon an independent and adequate state law ground, and this Court may not review it on habeas.

### Cause and Prejudice

"When a petitioner does not adequately present a claim to the state courts, he may obtain federal habeas relief only upon a showing of cause and prejudice for the default or upon a showing that a failure to grant him relief would work a fundamental miscarriage of justice." *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005) (quotation marks and citation omitted). In order to establish cause, Petitioner must show that "an external impediment" prevented him from presenting his arguments before the state courts. *See Bintz v. Bertrand*, 403 F.3d 859, 864 (7th Cir. 2005). In order to show prejudice, he must present evidence that the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (quotations marks, citation, and emphasis omitted). Petitioner has not shown or even made an argument that any external force prevented him from fairly presenting either the ineffective assistance claim or the due process claim to the state courts. He further has not met the high burden of showing that the errors at his trial, if any, worked to his actual and substantive disadvantage.

Nor has Petitioner shown or argued that there has been a fundamental miscarriage of justice, which requires a showing that a constitutional violation occurred which "probably resulted in the

conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  To meet this burden, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*  This requires "a stronger showing than that needed to establish prejudice." *Id.*  The burden is on Petitioner to demonstrate cause and prejudice to avoid default. *See Perruquet*, 390 F.3d at 514.  Petitioner merely states a psychiatric examination "would have provided relevant evidence" (Doc. 1, p. 15).  This claim is insufficient to demonstrate that it is more likely than not that no reasonable juror would have convicted him.  Petitioner has not, therefore, made a showing to overcome the procedural default of either of the claims.  Accordingly, it is **RECOMMENDED** that Ground 2 of the petition be **DENIED** because it is procedurally defaulted.

### GROUND 3

Petitioner claims that the trial court erred in limiting the testimony of Dr. Michael Althoff, an examining psychologist.  The court allowed Dr. Althoff to testify about Defendant's mental state or condition, but not about the circumstances surrounding the voluntariness or competency of defendant's confession.  Petitioner claims that his expert should have been allowed to testify that the threats made to his family by police made him exceptionally vulnerable to confessing.  Petitioner raised this claim on direct appeal to the Supreme Court of Illinois. *People v. Gilliam*, 670 N.E.2d at 619-620.

The Illinois Supreme Court determined:

It is settled that the admissibility of a confession that is challenged on the ground that it is involuntary is a matter for the trial court to determine in the first instance out of the presence of the jury.  If the court rules that the confession is voluntary and admissible in evidence, the defendant still has the right to present evidence to the jury that affects the credibility or weight to be given the confession. *People v. Cook*, 33 Ill. 2d 363, 369-70, 211 N.E.2d 374 (1965); *People v. Wagoner*, 8 Ill. 2d 188,

197, 133 N.E.2d 24 (1956); *accord Crane v. Kentucky*, 476 U.S. 683, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986).

However, this right of defendant does not diminish the general rule that the admission of evidence is within the sound discretion of the trial court, and its ruling will not be reversed absent abuse of that discretion. *People v. Ward*, 101 Ill. 2d 443, 455-56, 79 Ill. Dec. 142, 463 N.E.2d 696 (1984); *accord Crane*, 476 U.S. at 689-90, 106 S. Ct. at 2146, 90 L. Ed. 2d at 644-45.  Generally, expert testimony is admissible when the expert testifies to matters that are beyond the common knowledge of ordinary citizens, and where such testimony will aid the fact finder in reaching its conclusion. *People v. Jordan*, 103 Ill. 2d 192, 208, 82 Ill. Dec. 925, 469 N.E.2d 569 (1984); *People v. Free*, 94 Ill. 2d 378, 411, 69 Ill. Dec. 1 447 N.E.2d 218 (1983). Conversely, expert testimony is not admissible on matters of common knowledge unless the subject is difficult to understand and explain. *Hernandez v. Power Construction Co.*, 73 Ill. 2d 90, 98-99, 22 Ill. Dec. 503, 382 N.E.2d 1201 (1978).

In the present case, we conclude that the trial court properly limited the testimony of Dr. Althoff.  Whether defendant falsely confessed to protect his family is not a concept beyond the understanding of ordinary citizens, and is not difficult to understand or explain. *See People v. Slago*, 58 Ill. App. 3d 1009, 1015-16, 16 Ill. Dec. 392, 374 N.E.2d 1270 (1978); *accord People v. Lambrecht*, 231 Ill. App. 3d 426, 438-39, 172 Ill. Dec. 688, 595 N.E.2d 1358 (1992); *People v. Elder*, 219 Ill. App. 3d 223, 225-27, 161 Ill. Dec. 872, 579 N.E.2d 420 (1991).  Further, we note that defendant was not precluded from challenging the credibility of his confession. The jury could have reached the same conclusion as Dr. Althoff based on the facts imparted through the testimony of other witnesses. We cannot say that the trial court abused its discretion by limiting the testimony of Dr. Althoff.

*People v. Gilliam*, 760 N.E.2d at 619-620.

In *Crane v. Kentucky*, 476 U.S. 683, 688  (1986), the Supreme Court held that after a trial court determines that a defendant's confession was voluntary, the defendant may still present evidence regarding the circumstances surrounding his confession to the jury for consideration of its reliability.  The Court limited the effect of this rule, however, by pointing out its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts," and acknowledging "the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability–even if the defendant

would prefer to see that evidence admitted." *Id.* at 689-90 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).

The Illinois Supreme Court properly identified *Crane* as the controlling legal precedent. The Court determined, however, that the testimony of an expert was not necessary under Illinois state law regarding admissibility of expert opinions. This is not an objectively unreasonable application of *Crane*. The Court in *Crane* specified that its holding was not intended to limit a state court's ability to exclude evidence through application of other evidentiary rules.

Moreover, this type of evidentiary ruling is not cognizable on federal habeas review. It is settled that state court errors in evidentiary rulings do not entitle a defendant to habeas relief unless the error "was of such magnitude that it took on a constitutional dimension." *Howard v. O'Sullivan*, 185 F.3d 721, 723 (7th Cir. 1999). Such error does not take on a constitutional dimension unless the erroneous rulings were so prejudicial that petitioner's due process right to a fundamentally fair trial was compromised, meaning that "the error must have produced a significant likelihood that an innocent person has been convicted." *Id.* at 723-24*; see also Anderson v. Sternes*, 243 F.3d 1049, 1053 (7th Cir. 2001). Accordingly, evidentiary questions are generally not cognizable on habeas review. *See Abrams v. Barnett*, 121 F.3d 1036, 1042 (7th Cir. 1997) ("[T]he admissibility of evidence is generally a matter of state law and that, absent a showing that the admission of evidence violated a specific constitutional guarantee, a federal court can issue a writ of habeas corpus only when the ruling violated the defendant's right to due process.") (citations omitted).

Petitioner does not argue that the alleged trial court error in limiting the testimony of Dr. Althoff produced a significant likelihood that an innocent person was convicted. Thus, there was no showing that this allegedly erroneous evidentiary ruling took on a constitutional dimension. As

such it is not cognizable on habeas review.  Accordingly, the undersigned **RECOMMENDS** that Ground 3 of the petition be **DENIED**.

### GROUND 4

Petitioner argues that the trial court erred in allowing the introduction of evidence indicating that at the time of his arrest the police suspected he was involved in other unrelated criminal activity. Specifically, Plaintiff objects to the introduction of evidence that Petitioner participated in two criminal lineups, one of which was unrelated to the investigation of this case.  Petitioner raised this claim on direct appeal. *People v. Gilliam*, 670 N.E.2d at 620.

On this question, the Illinois Supreme Court determined that under Illinois law, evidence of other crimes committed by a defendant is inadmissible for purposes of establishing that the defendant has a propensity to commit crimes.  Evidence of other crimes is allowed if it is relevant to establish any other material question. *People v. Gilliam*, 670 N.E.2d at 620.  The Illinois Supreme Court determined that the evidence of the other lineup was "relevant to establish a legitimate reason for the detention, and thereby undermine defendant's claim of coercion." Id.

As discussed in connection with Ground 3, above, the Court will not reach the merits of this claim because this type of evidentiary ruling is not cognizable on federal habeas review.  Although Petitioner states the claim in terms of a violation of due process, he makes no showing that he was deprived of the right to a fair trial, or more importantly, that the alleged error "produced a significant likelihood that an innocent person has been convicted."  Without such a showing, the allegedly erroneous evidentiary ruling does not implicate a denial of a constitutional right, and is thus not cognizable on habeas review.  Accordingly, it is **RECOMMENDED** that Ground 4 be **DENIED**.

- 19 -

### GROUND 5

Petitioner argues that he was denied his constitutional rights when the trial court excluded a prospective juror who was qualified to serve, violating the rule in *Witherspoon v. Illinois*, 391 U.S. 510 (1968).

Respondent contends that this issue is moot because Petitioner's sentence was commuted from death to life imprisonment in 2003.  The undersigned agrees.  Although the Seventh Circuit has not ruled directly on the issue, at least one district court in the Circuit has found moot capital sentencing claims raised in a habeas petition after the commutation of a criminal sentence from death to life imprisonment.  That court based its finding of mootness on the Illinois Supreme Court's treatment of post-commutation capital sentencing issues, and on an unpublished order of the Seventh Circuit finding moot capital sentencing claims after commutation:

> The Illinois Supreme Court concluded that former Governor Ryan's commutation of the defendant's death sentence rendered moot any capital sentencing claims. *See, e.g., People v. Ceja*, 204 Ill. 2d 332, 273 Ill. Dec. 796, 789 N.E.2d 1228 (2003) (commutation removes judicially imposed sentence replacing it with a lesser, executively imposed sentence); *People v. Lucas*, 203 Ill. 2d 410, 272 Ill. Dec. 298, 787 N.E.2d 113 (2002) (same); *People v. Miller*, 203 Ill. 2d 433, 272 Ill. Dec. 155, 786 N.E.2d 989 (2002) (same). The Seventh Circuit has similarly decided the issue. See, e.g., *Wilson v. Mote*, No. 03-1943, slip. op. at 1 (7th Cir. June 18, 2003) (commutation mooted prisoner's habeas claims based on his death sentence).

*U.S. ex rel. Easley v. Hinsley*, 305 F. Supp.2d 867, 872 (N.D. Ill., 2004).

In the procedural history of this case itself, the Illinois Appellate Court found that the commutation of Petitioner's death sentence mooted two claims he raised in the petition for post-conviction relief.  The appellate court did not address those claims on their merits (Doc. 16, Exh. P).  The undersigned finds, therefore, that any claims regarding Petitioner's death sentence, including the claim raised here pursuant to *Witherspoon*, are moot.  The undersigned thus

**RECOMMENDS** that Claim 5 be **DENIED AS MOOT**.

**GROUND 6**

Petitioner argues that the prosecution, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), failed to disclose to his trial counsel information about a reward for his capture that may have motivated two witnesses to testify against him.  Petitioner contends that had his counsel known of the reward, he could have impeached the two witnesses, Thelma Scott-Robinson and Theresa Caruthers, undermining their credibility.  He further contends that the trial court erred in not allowing additional discovery to investigate these facts at the post-conviction stage.  Petitioner raised this claim in his petition for post-conviction relief and on appeal of the denial of the petition (Doc. 16, Exh. P).

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that due process is violated when the prosecution suppresses evidence favorable to a criminal defendant upon request where the evidence is material to guilt or to punishment without respect to the good or bad faith of the prosecution.  The prosecution's duty of disclosure covers both impeachment and exculpatory evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)).  To violate the rule in *Brady*, the evidence suppressed must be favorable to the defendant as exculpatory or for purposes of impeachment; the suppression must be either willful or inadvertent; and prejudice must result. *Strickler*, 527 U.S. at 281-82.  A *Brady* violation will not be found, however, "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281.

In reviewing this claim, the Illinois Appellate Court identified *Brady* as the controlling legal standard, and reasoned:

- 21 -

In the case at bar there is no reasonable probability that had the alleged impeachment evidence been disclosed to the defense and the witnesses cross-examined about their hope of obtaining a reward in return for testifying against the defendant, the defendant would have been acquitted. Accordingly, the alleged undisclosed impeachment evidence was not material, and the defendant's constitutional rights were not violated.

The two witnesses were relatives of the defendant who resided in Mississippi. They testified that shortly after the crimes, the defendant visited these relatives. He was driving a car which was substantially identical to that of the victim's, there were what appeared to be bloodstains on the back seat, there was a piece of woman's costume jewelry on the seat, and the defendant was "fidgety" and nervous. Presuming that the defense had known about the offer of a reward at the defendant's trial, defense counsel could have asked these witnesses if they knew about the reward, had received a reward in return for their testimony, or hoped to receive such a reward. The postconviction petition itself alleges that the only reward which might have been offered was for information leading to the arrest of the defendant and that this reward would not have been paid because the defendant turned himself in. Depending on the answer of the witnesses, some level of impeachment may have been achieved, but in light of the fact that no reward would have been paid to the witnesses, any impeachment would have been minimal.

On the other hand, the evidence against the defendant was quite strong and convincing. The evidence presented at the trial is contained in the Illinois Supreme Court's opinion in *People v. Gilliam*, 172 Ill. 2d 484 (1996), and we will not repeat it here. Suffice it to say that the defendant confessed to the crimes in detail, and many of those details were corroborated by other evidence in the case. The defendant admitted in his confession that he stole the victim's car, drove it south, and eventually sold it. Even had the prosecution disclosed to the defense the existence of a reward and the witnesses' hopes of receiving it, there is no reasonable probability that the result of the proceeding would have been different. Accordingly the trial court did not err in dismissing the defendant's postconviction claim, nor did the trial court abuse its discretion in denying the defendant's request for discovery.

(Doc.16, Exh. P, pp. 9-11.)

The Illinois Appellate Court's finding that there was no *Brady* violation regarding the reward was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Assuming the existence of a reward, the Court expressed doubt that any evidence thereof would have successfully impeached the witnesses. Accordingly, the Court held that there was no

- 22 -

reasonable probability that the result of the proceedings would have been different had the evidence been produced at trial. Without a reasonable probability that the outcome of the case would have been different, no *Brady* violation exists. This determination is not objectively unreasonable. As such, the undersigned finds that the Illinois Appellate Court's determination was not contrary to or an unreasonable application of controlling federal law. It is therefore **RECOMMENDED** that Ground 6 be **DENIED** on its merits.

## GROUND 7

Petitioner argues that his counsel was ineffective for failing to request a fitness hearing based upon the fact that he was taking Darvocet for pain during his trial. Petitioner raised this claim in his petition for post-conviction relief and on appeal from the denial of that petition (Doc. 16, Exh. P).

The Illinois Appellate Court found the following facts:

The defendant's amended post-conviction petition alleges that immediately before and during his trial and sentencing, while incarcerated in the Jefferson County jail, the defendant was taking prescribed Darvocet. According to the allegations in the petition, "[The drug made the defendant] feel drowsy and unable to concentrate, and if he took this drug on an empty stomach he would begin to feel 'spaced out' and have to lie down." The defendant could not remember the precise dates on which he took the medication, but he alleges that there were days on which he took the prescribed dosage of "one pill every four hours as needed" more than once. The petition alleges that the medication is psychoactive in nature and that due to the defendant's prior brain injury he "may have been more sensitive to the effects of [Darvocet] and that the medicine may have been more sedating or caused him to appear affectively flat or blunted as compared with a normal peer." The petition further alleges that the medication has an increased or psychotropic effect on individuals suffering from depression and/or liver damage, that the defendant has been diagnosed with depression, and that his "reported drinking habits suggest that he has suffered liver damage." Finally, the petition alleges that his counsel's failure to investigate and discover the defendant's ingestion of this medication and demand a fitness hearing constitutes ineffective assistance. The petition is supported by accompanying affidavits and exhibits.

(Doc. 16, Exh. P, pp. 3-4.)

- 23 -

At the time petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a claim for ineffective assistance of counsel, a convicted defendant must show (1) "that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment," and (2) "that the deficient performance prejudiced the defense."*Id.,* at 687. To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. When a court reviews a petitioner's claim, it must evaluate whether his counsel's performance undermined the adversarial process to the extent that "the trial cannot be relied on as having produced a just result." *Id.* at 686. Where an ineffective assistance of counsel claim may be disposed of because there is no showing of prejudice, the court need not evaluate counsel's performance. *Id.* at 697.

A criminal defendant is deemed fit for trial when he has the mental capacity to understand the charges against him and is able to assist his attorney in presenting his defense. *Young v. Walls*, 311 F.3d 846, 848 (7th Cir. 2002) (citing *Drope v. Missouri*, 420 U.S. 162, 171 (1975)). When fitness is raised in connection with an ineffective assistance of counsel claim, the question before the court is not whether a fitness hearing should have been held, but whether the defendant was fit to stand trial. *Eddmonds v. Peters*, 93 F.3d 1307, 1317 (7th Cir. 1996) (citing *Dusky v. United States*, 362 U.S. 402 (1960)). Only where there is a "reasonable probability" that the defendant was unfit, "calling into question the integrity of the adversarial process," will the result of the proceeding be questioned. *Eddmonds*, 93 F.3d at 1317 (citing *Strickland*, 466 U.S. at 694.)

The Appellate Court correctly identified *Strickland* as the controlling legal standard for

- 24 -

ineffective assistance claims and correctly stated the rule that a defendant is unfit for trial if he is unable to understand the nature and purpose of the proceedings or to assist in his own defense (Doc. 16, Exh. P, pp. 4-5). The court further identified the relevant test: whether the Petitioner was indeed unfit for trial (Doc. 16, Exh. P, p. 5).

The court found, based on the evidence adduced at the hearing on the post-conviction petition, that Petitioner was fit to stand trial. The court reasoned that Petitioner did not exhibit "disorder, delirium, or inability to comport his behavior to the proceedings," nor did his trial counsel believe that Petitioner was not fit to stand trial. Petitioner testified lucidly at trial and filed coherent *pro se* motions. Although Darvocet may have made him drowsy or caused his affect to appear blunted, the court found no evidence in the record indicating that the medication would have rendered him unable to understand the proceedings or to assist in his defense. The court thus concluded, "There simply is no reasonable probability that, had his counsel secured a fitness hearing premised on the defendant's ingestion of Darvocet, he would have been found unfit to stand trial. Even had his counsel's performance been deficient in failing to request a hearing, the defendant suffered no prejudice as a result and the defendant could not have prevailed on a claim of ineffective assistance of counsel" (Doc. 16, Exh. P, pp. 5-6).

Based on the evidence before it, it was reasonable for the court to conclude that Petitioner was fit to stand trial, and therefore that he suffered no prejudice within the meaning of *Strickland*. Thus, the undersigned finds that the Illinois Appellate Court's determinations were not contrary to or an unreasonable application of clearly established federal law. Accordingly, it is **RECOMMENDED** that Ground 7 of the petition be **DENIED**.

### GROUND 8

Plaintiff argues that the state violated *Brady v. Maryland*, 373 U.S. 83 (1963), in failing to disclose to the defense that he was administered Darvocet around the time of his trial.  Petitioner raised this claim in his petition for post-conviction relief and on appeal of the denial of that petition (Doc. 16, Exh. P).

As stated in connection with Ground 6, above, the Supreme Court held in *Brady* that due process is violated when the prosecution suppresses evidence favorable to a criminal defendant upon request where the evidence is material to guilt or to punishment without respect to the good or bad faith of the prosecution.  *Brady* is not violated unless there is "a reasonable probability that the suppressed evidence would have produced a different verdict." Id. at 281.

After correctly identifying *Brady* as the controlling standard, the Illinois Appellate Court determined: "because we have already found that the defendant would not have been found unfit even had a fitness hearing been held, the fact that the defendant was taking Darvocet was not material, that is, there is no reasonable probability that, had the fact that the defendant was taking Darvocet been disclosed to the defense, the result of the proceeding would have been different" (Doc. 16, Exh. P, p. 7).  The court found further that there was no evidence in the record showing that the prosecution knew that Petitioner was taking Darvocet, even though it is likely that his jailers were so aware.  Under Illinois law, the knowledge of the jailers cannot be imputed to the prosecution, thus, Petitioner's *Brady* claim fails.

This court need not address whether the knowledge of the jailers can be imputed to the prosecution because the Illinois Court's determination that Petitioner suffered no prejudice sufficiently disposes of the claim here.  The Court determined in its analysis of Ground 7, above,

that had a fitness hearing been held, Petitioner would have been found fit to stand trial. Accordingly, had the evidence that Petitioner was taking Darvocet been disclosed, the outcome of the proceeding would not have been different.  This analysis is a reasonable application of the rule in *Brady*, which is not violated unless there is a reasonable probability that the suppressed evidence would have produced a different outcome.  Accordingly, the undersigned finds that the Appellate Court's determination was not contrary to or an unreasonable application of clearly established federal law.  Thus, it is **RECOMMENDED** that Ground 8 of the petition be **DENIED**.

### CONCLUSION

In summary, it is **RECOMMENDED** that all grounds for relief raised in the petition be **DENIED**.  It is **FURTHER RECOMMENDED** that Terry McCann be substituted for the respondent, Deirdre Battaglia, that the Petition for a Writ of Habeas Corpus filed by the Petitioner on November 8, 2005 (Doc. 1) be **DENIED**, that this matter be **DISMISSED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have ten (10) days after service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED:  September 28, 2009**

s/*Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**